IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) | |
| OF THE UNITED STATES OF AMERICA   )  | FILED UNDER SEAL |
| FOR STORED ELECTRONIC             ) | |
| COMMUNICATIONS (TEXT MESSAGES) OF ) | |
| TELEPHONE NUMBER (540) 309-5956   ) | |
| PURSUANT TO 18 U.S.C. §§ 2703(a), ) | |
| 2703(b)(1)(A) and 2703(c)(1)(A)   ) | |

**AFFIDAVIT IN SUPPORT OF
SEARCH WARRANT APPLICATION
AND SEARCH WARRANT**

**INTRODUCTION**

I, Jason Thompson, depose and say as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since February 2004. I have received training in the area of the current investigation and detection of controlled substance traffickers. I have conducted and assisted in investigations into the unlawful possession, possession with the intent to distribute, and distribution of controlled substances, and the associated conspiracies in violation of Title 21, United States Code Sections 841 (a)(1), and 846. I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving distribution of controlled substances, and conspiracy to distribute controlled substances. Furthermore, I have authored the initial and extension affidavits regarding a Title III interception of wire and electronic communications. I have coordinated and conducted surveillance in conjunction with an active Title III investigation. I have also spoken on numerous occasions with informants, suspects, and other experienced narcotics traffickers concerning the methods and practices of drug traffickers, including the methods and practices used by drug traffickers.

I am familiar with the methods in which drug traffickers conduct their illegal activities to include communication methods, asset management, and narcotic transactions.

2. Through my training and experience, I am familiar with the drug culture in and around the Southwest Virginia Area.

3. The information contained within this affidavit is based on my personal experience as well as on information provided to me by other federal agents, local police officers, and confidential sources. Your affiant is aware that narcotic traffickers often keep drugs, firearms, and records in their residences regarding the purchase and sale of controlled substances. Such persons also keep telephone call/text/voicemail data records on their cellular device, records regarding home telephone billings, cellular telephone billings, travel (airline, hotel and rental car) receipts, money transfers, and ledgers with pay/owe information, firearms, ammunition, and any other documentation that can identify controlled drug sales/purchases and unknown co-conspirators. All of these items have significant evidentiary value in demonstrating involvement in drug trafficking.

4. I make this affidavit in support of an application for a search warrant for a certain account controlled by AT&T Wireless, a cellular provider headquartered at 11760 U.S. highway 1, Suite 600, North Palm Beach, Florida 33408. The account, **(540) 309-5956**, is from AT&T. The account to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require AT&T to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications. Telephone number **(540) 309-5956** was being utilized to contact drug associates and conduct drug/money transactions in the Western

2

District of Virginia and elsewhere. Telephone number **(540) 309-5956** is a cellular telephone utilized by Todd CRAGHEAD (hereinafter referred to as CRAGHEAD), who is believed to be a narcotics distributor operating in the Western District of Virginia.

5. I have personally participated in the investigation set forth below. The facts and information contained in this affidavit are based on my personal knowledge, as well as knowledge and information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that were not personally made were relayed to me by the person(s) who made such observations, or by reports that detailed the events described by that person(s). The investigation has utilized cooperating witnesses, surveillance, trash pulls, toll analysis, and a consent search. The cooperating witnesses have provided information against their penal interest and that information has been corroborated by independent sources.

6. This affidavit does not contain every fact known to me regarding this investigation, but rather contains information sufficient to demonstrate probable cause to believe that CRAGHEAD, is engaged in a conspiracy to violate federal drug laws—to wit: conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, and distribution of methamphetamine, in violation of 21 U.S.C. § 841; offenses involving the use of communications facilities in commission of narcotics offenses, in violation of 21 U.S.C. § 843(b); as well as the identification of individuals who are engaged in the commission of these offenses. Since this affidavit is being submitted for the limited purpose of securing a search warrant for the stored electronic communications, specifically text messages associated with the cellular telephone bearing telephone number **(540) 309-5956**, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested search warrant should be issued. Nor do I request that this Court

rely on any facts not set forth herein in reviewing this application.

7. Your affiant respectfully submits that probable cause exists to believe that CRAGHEAD utilized telephone number **(540) 309-5956** to violate federal drug laws, and that a search of the stored electronic communications, specifically text messages, will lead to evidence concerning these offenses.

## STATEMENT OF PROBABLE CAUSE

8. Beginning in approximately April 2019, DEA Roanoke began investigating the drug trafficking activities of CRAGHEAD after law enforcement received information that CRAGHEAD was involved in the distribution of methamphetamine, cocaine HCL, crack cocaine, and marijuana.

9. In 2019, investigators conducted an interview of nine different cooperating witnesses regarding the drug trafficking activities of CRAGHEAD. The nine cooperating witnesses identified CRAGHEAD as a Source of Supply (SOS) of various illegal narcotics to include: crack cocaine, marijuana, cocaine HCL, and methamphetamine. The nine cooperating witnesses identified CRAGHEAD as a SOS during the approximate time of 2018 and 2019.

10. In early 2020, investigators conducted an interview of a cooperating witness that was supplied cocaine HCL by CRAGHEAD. The cooperating witness stated he/she purchased approximately 2,600 grams of cocaine HCL from CRAGHEAD during the approximate time period of 2016 through 2019.

11. In May 2020, DEA surveillance was conducted on CRAGHEAD. During the course of the surveillance law enforcement observed him travel to 343 Ridgeacre Drive in Rocky Mount, Virginia. On one of the occasions, DEA surveillance observed CRAGHEAD enter a shed located on the property where he remained for approximately 30 minutes. On both

occasions, a black Kia with Virginia registration UGC-5591 was parked at the residence. The vehicle is registered to Norma Jean HAIRSTON. During the course of the surveillance, law enforcement observed CRAGHEAD take a bag of trash from his residence at 50 Goodview Avenue in Rocky Mount, Virginia and place it into his vehicle. Surveillance observed him take the trash to an apartment complex approximately 1 mile from his residence and place it in the trash receptacle. DEA recovered the trash bag placed in the trash receptacle by CRAGHEAD. 22 plastic baggies with missing corners and 5 plastic baggies with a white powder residue were recovered by law enforcement. In addition, a medical statement addressed to Todd CRAGHEAD was located in the trash bag. The 5 plastic baggies were sent to the Mid-Atlantic Laboratory for an analysis, which resulted in a positive test for cocaine base. Based on your affiants training and experience, the 22 plastic baggies with missing corners were utilized to package quantities of illegal drugs for re-sale. It is known to your affiant that the town of Rocky Mount provides trash pickup at CRAGHEAD's residence. Based on your affiant's training and experience it is also known that drug traffickers frequently dispose of their trash in locations separate of their residences to avoid detection by law enforcement. Based on the observations made during the surveillance, it is your affiant's belief that CRAGHEAD was utilizing the shed at 343 Ridgeacre Drive as a "stash" location and that he had packaged drugs for re-sale and attempted to dispose of any evidence to avoid detection by law enforcement.

12. On October 20, 2020, DEA and the Franklin County, Virginia Sheriff's Office (FCSO) went to 343 Ridgeacre Drive in Rocky Mount, Virginia to conduct a consent search. The property was identified as the residence of Betty Davis, Norma HAIRSTON, and George DAVIS who occasionally stayed at the residence. Betty Davis was identified as the mother of Norma and George. Betty Davis provided verbal consent to search the property at 343 Ridgeacre

Drive. Betty Davis told law enforcement that she did not have a key for the locked shed on the property. Betty Davis told investigators that Norma HAIRSTON possessed the key to the shed on the property and that she was currently at work. Law enforcement left the residence and located HAIRSTON at her employment. HAIRSTON provided a key and verbal consent to search the property. After law enforcement initially left the residence at 343 Ridgeacre Drive, approximately 35 minutes later, law enforcement returned to Ridgeacre Drive in route to the residence. Upon turning onto Ridgeacre Drive, law enforcement observed a white Toyota Camry, operated by a black male, with Virginia registration URB-6388 traveling from the direction of 343 Ridgeacre. The vehicle was approximately 150 yards from 343 Ridgeacre Drive when it was observed by law enforcement. Your affiant has observed CRAGHEAD operating the vehicle on numerous occasions and observed the vehicle parked at his residence on Goodview Avenue on a frequent basis. Law enforcement continued to 343 Ridgeacre Drive and proceeded with the consent search. A search of the property resulted in the seizure of approximately 4 ounces of suspected cocaine from the locked shed located on the property. The cocaine was later field-tested for the presence of cocaine, which resulted in a positive reaction. Law enforcement also located plastic gallon size Ziploc bags and digital scales in the shed. The shed was identified as the same shed, which DEA surveillance observed CRAGHEAD enter in May 2020. In addition, approximately 12 ounces of methamphetamine, 5 pounds of marijuana, and $61,100 United States Currency in numerous bundles was located and seized in the wooded area approximately 20 yards behind the shed. The wooded area was identified as part of 343 Ridgeacre Drive. During the course of the initial search, Norma HAIRSTON arrived and provided a Mirandized statement regarding the items located on the property. HAIRSTON stated she had no knowledge of the drugs and/or currency located on the property. HAIRSTON

also stated that she was the only person that possessed a key to the locked shed.  HAIRSTON stated that she had not spoken to CRAGHEAD since October 15, 2020 and that she had not called him that day.  HAIRSTON stated that after law enforcement left 343 Ridgeacre Drive to retrieve the key from her at work, her mother called her and told her that the police had been there and was coming to get the shed key from her.  HAIRSTON provided a telephone number of **(540) 309-5956** for CRAGHEAD.  HAIRSTON stated her cellular telephone number was 540-352-8583.

13. On November 2, 2020, Norma HAIRSTON contacted the FCSO and requested to speak with investigators in the presence of her attorney.  HAIRSTON and her attorney met with investigators and provided a voluntary statement.  HAIRSTON stated that she had left something out when she spoke with investigators on October 20, 2020.  HAIRSTON stated she had given a key for the shed (343 Ridgeacre Drive, Rocky Mount, Virginia) to Todd CRAGHEAD about one year ago.  HAIRSTON also stated that on October 20, 2020, she did make one phone call to CRAGHEAD after law enforcement met with her at her workplace and obtained the shed key.  HAIRSTON stated she knew the police had been there so she called and asked CRAGHEAD to go by the residence and check on her mother.  HAIRSTON stated that during the phone call, she lost service and had not spoken to him since.

14. On October 21, 2020 and again on November 10. 2020, an Administrative Subpoena was served on AT&T for telephone number **(540) 309-5956**.  Due to a system data malfunction, the results of the subpoena have not been received.  CRAGHEAD is known to have multiple telephones in his possession and frequently disconnect or "drop" cellular phones.

15. On October 21, 2020, an Administrative Subpoena was served on Verizon for Norma HAIRSTON's telephone number 540-352-8583.  Due to a system data malfunction, the

results of the subpoena were not received until November 11, 2020.  The results of the subpoena showed that there was no subscriber name or address listed.  It is known to investigators that drug traffickers utilize cellular telephone accounts with no names and/or provide false account information to avoid detection by law enforcement.  A toll analysis on HAIRSTON's cellular telephone number 540-352-8583 revealed that HAIRSTON received a telephone call from the known telephone number of Betty Davis on October 20, 2020.  The time of the call was consistent the departure of law enforcement from Davis' residence at 343 Ridgeacre Drive, Rocky Mount, Virginia, while in route to obtain the shed key from HAIRSTON.  The toll analysis also revealed two telephone calls to CRAGHEAD at telephone number **(540) 309-5956**.  The times of the calls were consistent with what would have been prior to law enforcement arrival to meet with HAIRSTON and obtain the shed key.  The toll analysis revealed that HAIRSTON called **(540) 309-5956** eight more times during the next hour and fifteen minutes after law enforcement made contact with HAIRSTON to obtain the shed key.

16.  Based on cooperating witnesses statements, surveillance, toll analysis, observation of CRAGHEAD's vehicle, and the conflicting statements of HAIRSTON, it is your affiant's belief that HAIRSTON contacted CRAGHEAD at telephone number **(540) 309-5956** and warned him that law enforcement was going to search the property at 343 Ridgeacre Drive in Rocky Mount, Virginia.  It is your affiant's belief that while law enforcement was attempting to obtain the key for the shed on the property, CRAGHEAD traveled to 343 Ridgeacre Drive and attempted to remove and conceal his illegal drugs and drug proceeds to avoid detection by law enforcement.

17.  In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public, and that stored electronic

communications, including retrieved and un-retrieved voicemail and text messages for AT&T. Further, I am aware that computers located at AT&T Wireless contain information and other stored electronic communications belonging to other unrelated third parties.

18. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging."

19. Based upon this analysis and the information outlined in this affidavit, your affiant believes that CRAGHEAD utilized **(540) 309-5956** to further his illegal activities and that evidence of these illegal activities will be found in the stored electronic communications for this telephone number.

_____

*Jason Thompson*

Jason Thompson, Special Agent
Drug Enforcement Administration

Entered:  November 19, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

9